## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| MARK J. UHRINA, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:24-cv-02070 |
| UNITED DEBT SETTLEMENT, LLC, | |
| Defendants. | JURY TRIAL DEMANDED |

### COMPLAINT

Now comes MARK J. UHRINA ("Plaintiff"), by and through the undersigned, complaining as to the conduct of UNITED DEBT SETTLEMENT, LLC, ("Defendant") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* and the Ohio Credit Services Organizations Act ("OCSOA") under O.R.C. § 4712.01 *et seq.* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Northern District of Ohio and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Northern District of Ohio.

### PARTIES

1

4.  Plaintiff is a consumer over 18 years of age, residing in North Ridgeville, Ohio, which lies within the Northern District of Ohio.

5.  Defendant is a debt settlement and credit repair company whose offered services are designed to resolve and settle debts impacting consumers' credit, so that consumers can enjoy improved credit through the offerings. Defendant is a limited liability company organized under the laws of the state of New York with its principal place of business located at 240 West 37th Street, Suite 400, New York, New York 10001.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

FACTS SUPPORTING CAUSES OF ACTION

7.  In approximately July of 2024, Plaintiff had numerous obligations which he wanted to address which were impacting his credit, and so Plaintiff sought out the assistance of various debt relief and credit repair companies.

8.  After researching his options online, Plaintiff subsequently happened upon Defendant and its services, thus Plaintiff spoke with Defendant regarding the nature of its services.

9.  Defendant advised that its services would assist Plaintiff in reaching negotiated settlements with his various creditors in order to resolve the obligations for less than the balance being sought by such creditors.

10.  Defendant further represented its services as being for the explicit and implicit purpose of improving his credit score, history, and/or rating, as Defendant represented that by engaging in negotiations to reduce the balance on certain enrolled debts, Plaintiff would be able to address debts that would otherwise be unaffordable, which would further improve his credit history.

11.   Upon information and belief, Defendant routinely represents to prospective customers and/or enrolled clients that its services will restore their credit.

12.   Defendant further advised that its services would include setting up a dedicated bank account, into which Plaintiff's monthly payments would go and from which Defendant would take funds to perform its services and pay Plaintiff's creditors when settlements were reached.

13.   In essence, Plaintiff would hire Defendant to conduct its debt resolution program, and Defendant would resolve the debts through the funds Plaintiff submitted to said account while taking its fees for doing so from the same account.

14.    Plaintiff found Defendant's services desirable as he believed Defendant would actively resolve his obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

15.   Plaintiff thereafter began making scheduled $153 biweekly payments to Defendant, and these payments were scheduled to be made for several years.

16.   Plaintiff was further informed that he should cease paying his creditors and instead divert those payments to Defendant for its services, which was not fully explained to Plaintiff prior to his assent to the program.

17.   Plaintiff was further told that Defendant would handle all communications between himself and his creditors, and that Plaintiff could inform each creditor if he was contacted by them that he was undergoing hardship.

18.   To that end, Defendant provided Plaintiff a document containing a series of form letters he could send to his creditors in order to direct said creditors to speak with Defendant, including an Authorization to Communicate and Negotiate, a Request to Cease Further Communication, and a Financial Hardship statement.

3

19. These documents contained statements which ostensibly were to be sent by Plaintiff to his creditors such as, "[u]nforeseen financial difficulties have resulted in me being unable to meet its [sic] financial obligations currently. While I cannot state with certainty the duration of this hardship, outstanding and excess payment obligations have put our [sic] me at risk of imminent failure. I apologize and truly desire to reach a mutually beneficial resolution with each of our creditors. However, these circumstances have necessitated me [sic] seeking of legal counsel and advices, to protect the solvency and ultimate future of my family. I am currently considering all legal and non-legal options, including alternate repayment terms and changes, in dealing with this hardship."

20. Defendant encouraged Plaintiff to make statements like these to his creditors, despite the fact that Defendant is not a law firm and upon information and belief does not directly employ any attorneys on behalf of consumers like Plaintiff.

21. Defendant further advised Plaintiff that, if he began receiving calls directly from his creditors, he could answer said calls and inform his creditors that he was 'trying to avoid bankruptcy,' regardless of whether or not such a statement was accurate.

22. While Plaintiff was under the impression that Defendant would immediately begin negotiations with his creditors, he was surprised and enraged to learn subsequently that his accounts were defaulted and charged-off as he ceased to make payments on said accounts.

23. This led to further diminishment of Plaintiff's credit history, credit score, and his overall financial situation, directly contrary to what Defendant represented would happen and what Defendant claimed it could do for Plaintiff.

24. Plaintiff further learned in speaking with one of his creditors that, despite Plaintiff's maintenance of payments to Defendant for months, Defendant never reached out to or spoke to Plaintiff's creditor.

25. Furthermore, Defendant ultimately failed to resolve any of Plaintiff's accounts whatsoever.

26. In sum, Plaintiff has made significant payments to Defendant only to be left with a number of charged-off obligations and a significantly worse financial position.

27. Furious that he had been misled by Defendant about his options and the efficacy of its services, Plaintiff cancelled his agreement with Defendant.

28. Upon information and belief, Defendant failed to fully refund Plaintiff for services it ultimately did not perform as agreed upon.

29. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

30. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair services, out of pocket damages including paying Defendant for services it did not perform, as well as numerous violations of his state and federally protected interests – interests which were materially harmed as a result of Defendant's conduct.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

31. Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

32. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

33. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or

perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

34. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history and help reestablish Plaintiff's credit, at it would allow him to resolve obligations which otherwise would go unresolved.

### a.  Violations of CROA §§ 1679b(a)(1)

35. The CROA, pursuant to 15 U.S.C. § 1679b(a)(1)(B)(i) provides that any person may not "make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing or credit capacity to any person who has extended credit to the consumer."

36. Defendant violated the above-referenced portion of the CROA through its recommendations to Plaintiff that he should make statements to his creditors regarding his ability to pay his obligations that Defendant knew or should have known were untrue and misleading. Defendant provided Plaintiff form letters that it advised he could send to his creditors that included statements implying that Plaintiff was seeking legal counsel to handle his credit and financial issues, despite the fact that Defendant was aware that this was not the case. Defendant further encouraged Plaintiff to inform his creditors that he was attempting "to avoid bankruptcy" whether or not Plaintiff was actually considering such an option.

**b. Violations of CROA §§ 1679b(a)(3)-(4)**

37. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

38. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant represented to Plaintiff that it would quickly get to work resolving his obligations, and that Plaintiff would see improvement to his credit as a result of Defendant's performance. Upon information and belief, Defendant engages in this behavior on a persistent and frequent basis in order to mislead vulnerable and desperate consumers into making payments under false and deceptive pretenses.

39. Defendant further violated the above provisions of the CROA through its misleading representations as to the time frame in which it would be able to resolve Plaintiff's obligations. Plaintiff was led to believe that Defendant would quickly get to work resolving all of Plaintiff's obligations, yet as evidenced by Defendant's failure to resolve any of Plaintiff's obligations after months or even reach out to his creditors to begin negotiating as represented, these representations were false.

40. Defendant additionally violated the above provisions of the CROA through its false and deceptive instruction that Plaintiff's best course of action would be to cease paying his creditors and instead divert those funds to Defendant as a means of giving Defendant more 'negotiating

7

power.' Defendant failed to properly disclose the potential negative impact this course of action would have for Plaintiff, as it was generally represented to Plaintiff that Defendant's program would improve his credit and resolve his obligations. Furthermore, despite Defendant's claims that this course of action gave it more 'negotiating power,' its subsequent conduct in failing to fully resolve any of Plaintiff's obligations further underscores that this course of action did not positively affect Defendant's ability to negotiate on behalf of Plaintiff.

41. Defendant further violated the above provisions of the CROA through its fraudulent conduct in making certain representations designed to induce consumer participation in its program, only to cut against those representations in the contracts it enters into with consumers. Defendant engages in this deceptive and misleading conduct in order to get consumers on the hook for its program, only to feebly attempt to justify its failures and conduct through contractual language that runs contrary to its representations made to consumers. That Defendant's contracts with consumers contain a merger and integration clause seeking to remove its representations from the nature of the parties' relationship only further illustrates the fraudulent and deceptive nature of its conduct.

### c.  Violations of CROA § 1679b(b)

42. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

43. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed, and similarly through its failure to

fully refund Plaintiff for services it had not performed at the time Plaintiff cancelled his agreement with Defendant.

### d.  Violation of CROA § 1679c

44.  The CROA, pursuant to 15 U.S.C. § 1679c, outlines a number of disclosures that credit repair organizations must provide to consumers prior to contracting with consumers for the provision of services.

45.  Defendant violated the above provision of the CROA through its failure to provide Plaintiff the disclosures it was required to provide to Plaintiff.

### e.  Violation of CROA §§ 1679de

46.  The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for any contracts between CROs and their customers, including "a conspicuous statement, in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight on the 3rd business day after the date on which you signed the contract. See attached notice of cancellation form."

47.  Defendant violated 15 U.S.C. §§ 1679d through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff in the manner required by the CROA.

### f.  Violation of CROA § 1679f(b)

48.  The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

49.  Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contract contains a number of provisions which attempt to broadly shield itself from liability against protections afforded under CROA. Defendant's contract further seeks to prevent Plaintiff from seeking recourse and remedies provided by the CROA. Furthermore, Defendant's contract contains a merger and integration clause which constitute an attempt by Defendant to insulate itself from liability in connection with the manner in which it represented its services to Plaintiff prior to Plaintiff signing up with Defendant.

50.  The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, MARK J. UHRINA, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE OHIO CREDIT SERVICES ORGANIZATION ACT

51.  Plaintiff restates and realleges paragraphs 1 through 50 as though fully set forth herein.

52.  Plaintiff is a "buyer" as defined by O.R.C. § 4712.01(A).

53. Defendant is a "credit services organization" as defined by O.R.C. § 4712.01(C)(1).

### a. Violations of O.R.C. § 4712.04

54. The OCSOA, pursuant to O.R.C. § 4712.04(A), provides that "[b]efore executing a contract or agreement with a buyer or receiving money or other valuable consideration, a credit services organization shall provide the buyer with a written statement containing" certain information.

55. Defendant violated § 4712.04(A) by failing to provide the statement of rights required to be provided.

### b. Violations of O.R.C. § 4712.05

56. The OCSOA, pursuant to O.R.C. § 4712.05, outlines the requirements for credit service organization contracts.

57. Defendant violated this provision due to its contract's noncompliant nature. Defendant's contract contains but a fraction of the information and disclosures required by the OCSOA.

### c. Violations of O.R.C. § 4712.07

58. The OCSOA, pursuant to O.R.C. § 4712.07, outlines a number of prohibited practices for credit service organizations.

59. § 4712.07(A) provides that a CSO cannot "[c]harge or receive directly or indirectly from a buyer money or other consideration readily convertible into money until all services the organization has agreed to perform for the buyer are completed . . . ."

60. Defendant violated the above in much the same way it violated 15 U.S.C. § 1679b(b).

61. The OCSOA, pursuant to O.R.C. § 4712.07(C), provides that a CSO cannot "[m]ake or use a false or misleading representation in the offer or sale of the services of the organization." Pursuant to O.R.C. § 4712.07(D), a CSO cannot "[e]ngage, directly or indirectly in an

unconscionable, unfair, or deceptive act or practice . . . in connection with the offer or sale of the services of a credit services organization." Similarly, pursuant to O.R.C. § 4712.07(L), a CSO cannot "[e]ngage, directly or indirectly, in any fraudulent or deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization.

62. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### d. Violations of O.R.C. § 4712.08

63. The OCSOA, pursuant to O.R.C. § 4712.08, lists a number of further conduct which is prohibited, including making "false promises through advertising or other means in the conduct of its business or engage in a continued course of misrepresentations in the conduct of its business" and engaging "in conduct that constitutes improper, fraudulent, or dishonest dealings in the conduct of its business." O.R.C. §§ 4712.08(B) & (C).

64. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### e. Violations of O.R.C. § 4712.09

65. The OCSOA, pursuant to O.R.C. § 4712.09, provides that "No credit services organization shall cause or attempt to cause a buyer to waive a right under [the OCSOA]."

66. Defendant violated this provision through its blatant attempts to cause Plaintiff to waive rights and protections afforded him.

WHEREFORE, Plaintiff, MARK J. UHRINA, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to O.R.C. § 4712.10(A);

c. Awarding Plaintiff punitive damages pursuant to O.R.C. § 4712.10(A);

d. Enjoin Defendant from further violations of law pursuant to O.R.C. § 4712.10(B),

e. Awarding Plaintiff' costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief this Honorable Court deems just and appropriate.

Dated: November 27, 2024    Respectfully submitted,

           s/ Nathan C. Volheim
           Nathan C. Volheim, Esq. #6302103
           Counsel for Plaintiff
           Sulaiman Law Group, Ltd.
           2500 South Highland Ave., Suite 200
           Lombard, Illinois 60148
           (630) 568-3056 (phone)
           (630) 575-8188 (fax)
           nvolheim@sulaimanlaw.com